**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **GARY WHITBY** and<br>**JEREMY PAQUETTE**,<br><br>Plaintiffs,<br><br>v.<br><br>**CERNER CORPORATION**,<br><br>Defendant. | Case No. 2:25-CV-04087-BP<br>Hon. Beth Phillips |

**PLAINTIFFS' OPPOSING SUGGESTIONS TO DEFENDANT CERNER CORPORATION'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** .................... II

**TABLE OF AUTHORITIES** .................... III

**INTRODUCTION** .................... 1

**STATEMENT OF FACTS** .................... 2

**ARGUMENT** .................... 4

**I. THE FIRST-FILED RULE DOES NOT APPLY TO THIS CASE** .................... 4

**II. PLAINTIFFS HAVE STANDING & ADEQUATELY ALLEGE INJURY IN FACT** .................... 6

*A. The Unauthorized Disclosure of Health Information is an Injury-in-Fact* .................... 6

**III. PLAINTIFFS' PLAUSIBLE ALLEGATIONS SURVIVE AND SATISFY RULE 12(b)(6)** .................... 11

*A. Plaintiffs Adequately Pled a Cause of Action Under the ECPA* .................... 12

*B. Plaintiffs Adequately Pled a Cause of Action for Tampering with Computer Data in Violation of MO. REV. STAT. §§ 569.095 & 537.525* .................... 14

*C. Plaintiffs Adequately Pled Intrusion Upon the Seclusion of Another* .................... 15

*D. Plaintiffs Adequately Pled Identity Theft Under MO. REV. STAT. § 570.223* .................... 17

*E. Plaintiffs Adequately Pled Unjust Enrichment* .................... 19

**IV. WITH-PREJUDICE DISMISSAL UNDER RULE 12(b)(6) IS ENTIRELY UNWARRANTED AND UNDERMINED BY CERNER'S CITED AUTHORITY** .................... 20

**CONCLUSION** .................... 21

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. PSP Grp., LLC*
691 F. Supp. 3d 1031 (E.D. Mo. 2023) ........................................ 8

*Anzaldua v. Ne. Ambulance and Fire Prot. Dist.*
793 F.3d 822 (8th Cir. 2015) ........................................ 15

*Auer v. TransUnion, LLC*
902 F.3d 873 (8th Cir. 2018) ........................................ 7

*Doe v. BJC*
No. 2222-CC09151-01 (Mo. Cir. Ct. St. Louis City) ........................................ 12

*Braitberg v. Charter Communications, Inc.*
836 F.3d 925, 930 (8th Cir. 2016) ........................................ 7, 10

*Brodsky v. Apple*
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................ 15

*Brown v. Waddell*
50 F.3d 285 (4th Cir. 1995) ........................................ 14

*Campbell v. Accts. Receivable Mgmt., Inc.*
No. 4:14-cv-00793, 2015 WL 4425823 (W.D. Mo. July 20, 2015) ........................................ 18

*Carlsen v. GameStop, Inc.*
833 F.3d 903 (8th Cir. 2016) ........................................ 9

*Cooper v. Hutcheson*
472 F. Supp. 3d 509 (E.D. Mo. 2020) ........................................ 17

*Corcoran v. Sw. Bell Telephone Co.*
572 S.W.2d 212 (Mo. Ct. App. 1978) ........................................ 16

*Cousin v. Sharp Healthcare*
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........................................ 13

*Doe I v. Google LLC*
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........................................ 21

*Doe I v. Google LLC*
No. 23-cv-02431, 2025 WL 1616720 (N.D. Cal. June 6, 2025) ........................................ 13, 15

*Doe v. Boone Health, Inc.*
2023 WL 4996117 (Mo. Cir. July 20, 2023) ........................................ 12, 15, 18, 20

*Doe v. Cass Regional Med. Ctr.*
No. 22CA-CC00323, 2024 WL 1771863 (Mo. Cir. Apr. 1, 2024)............................ 12, 15

*Doe v. Mosaic Health Sys.*,
2024 WL 6823992 (Mo. Cir. Oct. 1, 2024)............................................................ 12, 15

*Doe v. Tenet Healthcare Corp.*
--- F. Supp. 3d---, 2025 WL 1635956 (E.D. Cal. June 9, 2025)....................................... 13

*Doyle v. Trans Union, Delaware*
638 F. App'x 559 (8th Cir. 2016)........................................................................ 18

*Duqum v. Scottrade, Inc.*
No. 4:15-CV-1537-SPM, 2016 WL 3683001 (E.D. Mo. July 12, 2016)...................... 1, 10

*Frasco v. Flo Health, Inc.*
No. 3:21-cv-00757, 2022 WL 21794391 (N.D. Cal. June 6, 2022)................................ 11

*Gilday v. Dubois*
124 F.3d 277 (1st Cir. 1997)................................................................................ 13

*Haworth v. New Prime, Inc.*
448 F. Supp. 3d 1060 (W.D. Mo. 2020)................................................................... 5

*Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc.*
892 F.3d 613 (4th Cir. 2018)................................................................................ 11

*In re Amer. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021)......................................... 20

*In re Certified Question of Law*
858 F.3d 591 (FISC 2016).................................................................................... 14

*In re Facebook Internet Tracking Litig.*
140 F. Supp. 3d 922 (N.D. Cal. 2015).................................................................. 10

*In re Facebook Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020).......................................................................... 1, 7, 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*
402 F. Supp. 3d 767 (N.D. Cal. 2019).................................................................. 20

*In re Folgers Coffee, Marketing Litig.*
No. 21-2984-MD-W-BP, 2022 WL 989727 (W.D. Mo. Mar. 9, 2022).............................. 5

*In re Google Cookie Placement Consumer Privacy Litig.*
934 F.3d 316 (3d Cir. 2019)............................................................................... 8, 9

*In re Google Loc. Hist. Litig.*
514 F. Supp. 3d 1147 (N.D. Cal. 2021)........................................................................ 20

*In re Meta Pixel Healthcare Litig.*
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................ 13

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*
748 F. Supp. 3d 262 (E.D. Pa. 2024) ......................................................................... 20

*In re Nickelodeon Consumer Privacy Litig.*
827 F.3d 262 (3d Cir. 2016) ..................................................................................... 7

*In re Pen Register App*.
396 F. Supp. 2d 45 (D. Mass. 2005) .......................................................................... 13

*In re Pharmatrak, Inc*.
329 F.3d 9 (1st Cir. 2003) ....................................................................................... 13

*In re SuperValu, Inc.*
870 F.3d 763 (8th Cir. 2017)..................................................................................... 10

*J.C. v. Cath. Health Sys. Inc*.
No. 1:23-cv-00796, 2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ........................... 11, 21

*Jane Doe & Janet Doe v. Missouri Delta Med.Ctr.*
No. 23PE-CC00038 (Mo. Cir. Ct. Pemiscot Cnty. Feb. 26, 2024) ............................ 12, 15

*John Doe et al. v. St. Luke's Episcopal Presbyterian Hospitals*
No. 23SL-CC01593 (Mo. Cir. Ct. St. Louis Cnty. Dec. 28, 2023)............................ 12, 15

*Jones v. Bloomingdales.com, LLC*
124 F.4th 535 (8th Cir. 2024)..................................................................................... 8

*Katz-Lacabe v. Oracle America, Inc.*
No. 22-CV-04792, 2023 WL 6466195 (N.D. Cal. Oct. 3, 2023), *aff'd*, No. 22-CV-04792, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023)........................................................... 13, 20

*Kraft v. Essentia Health*
604 F. Supp. 3d 813 (D.N.D. 2022) ........................................................................... 21

*Kuhns v. Scottrade, Inc.*
868 F.3d 711 (8th Cir. 2017) ...................................................................................... 1

*Kurowski v. Rush Sys. for Health*
683 F. Supp. 3d 836 (N.D. Ill. 2023) ...................................................................... 1, 21

*Kurowski v. Rush Sys. for Health*
No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)........................................... 21

*Lewis v. Navient Solutions, Inc.*, No. 4:13-CV-00826, 2015 WL 10936762 (W.D. Mo. Jan. 22, 2015) ........ 18

*Lizama v. Venus Lab'ys, Inc.*
679 F. Supp. 3d 848 (E.D. Mo. 2023) ........ 19

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ........ 6

*Marden's Ark, Inc. v. UnitedHealth Group, Inc.*
No. 19-cv-1653, 2020 WL 13002517 (D. Minn. Aug. 20, 2020) ........ 4

*Martin v. Medicredit, Inc.*
No. 16CV01138, 2016 WL 6696068 (E.D. Mo. Nov. 15, 2016) ........ 5

*McMorris v. Carlos Lopez & Assocs.*
995 F.3d 295 (2d Cir. 2021) ........ 11

*Mekhail v. North Memorial Health Care*
726 F. Supp. 3d 916 (D. Minn. 2024) ........ 12

*Morris v. Northland Grp., Inc.*
No. 15-0888-CV, 2016 WL 3562144 (W.D. Mo. June 24, 2016) ........ 18

*Motogolf.com, LLC v. Top Shelf Golf, LLC*
528 F. Supp. 3d 1168 (D. Nev. 2021) ........ 15

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*
No. 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ........ 21

*Orthmann v. Apple River Campground, Inc.*
765 F.2d 119 (8th Cir. 1985) ........ 4

*Pulliam v. W. Tech. Grp., LLC*
No. 8:23-CV-159, 2024 WL 356777 (D. Neb. Jan. 19, 2024) ........ 10

*Rainsy v. Facebook*
311 F. Supp. 3d 1101 (N.D. Cal. 2018) ........ 14

*Ramirez v. LexisNexis Risk Sols.*
729 F. Supp. 3d 838 (N.D. Ill. 2024) ........ 20

*Riganian v. LiveRamp Holdings, Inc.*
--- F. Supp. 3d ---, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ........ 20

*Rudolph v. Hudson's Bay Co.*
No. 18-cv-8472, 2019 WL 2023713 (S.D.N.Y. May 7, 2019) ........ 10

*S.D. v. Hytto Ltd.*
No. 18-cv-00688, 2019 WL 8333519 (N.D. Cal. May 15, 2019) .................................... 14

*SL EC, LLC v. Ashley Energy, LLC*
561 F. Supp. 3d 802 (E.D. Mo. 2021) .................................................................. 19

*Smith v. Curators of Univ. of Mo.*
No. 17-4016-CV, 2017 WL 11492763 (W.D. Mo. Dec. 20, 2017) .................................. 17

*Smith v. Loyola Univ. Med. Ctr.*
No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ........................................ 7

*Sofka v. Thal*
662 S.W.2d 502 (Mo. banc 1983) ........................................................................ 15

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) ........................................................................................... 7

*St. Anthony's Med. Ctr. v. H.S.H.*
974 S.W.2d 606 (Mo. Ct. App. 1998) ............................................................... 9, 16

*St. Aubin v. Carbon Health Techs., Inc.*
No. 24-cv-00667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ...................................... 13

*Svenson v. Google Inc.*
No. 13-cv-04080, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .................................. 10

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) ........................................................................................... 7

*U.S. v. Dickerman*
No. 16-CR-00258, 2017 WL 11485604 (E.D. Mo. Sept. 26, 2017) ................................ 13

*U.S. v. Hoeffener*
No. 4:16–CR–374, 2018 WL 2996317 (E.D. Mo. May 9, 2018) .................................... 13

*U.S. v. Reed*
575 F.3d 900 (9th Cir. 2009) ............................................................................. 13

*U.S. v. Telecom Assoc. v. FCC*
227 F.3d 450 (D.C. 2000) ................................................................................. 14

*Warth v. Seldin*
422 U.S. 490 (1975) ........................................................................................... 7

**Statutes**

18 U.S.C. § 2510 .......... 12

Mo. Rev. Stat. § 1.020 .......... 18

Mo. Rev. Stat. § 537.525 .......... 14

Mo. Rev. Stat. § 569.095 .......... 14

Mo. Rev. Stat. § 570.223 .......... 17

**Other Authorities**

H.R. Rep. No. 107-236 .......... 13

*Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Dep't of Health & Human Services (2022) .......... 19

**Treatises**

Restatement (Second) of Torts § 652A, cmt. a (1977) .......... 7

**Regulations**

5 C.F.R. § 164.508 .......... 19

## INTRODUCTION

Defendant Cerner Corporation ("Cerner") fundamentally misrepresents Plaintiffs' allegations, mischaracterizes and relies on district court cases that have been overturned on appeal, and outright ignores a legion of cases that address identical claims in identical contexts that have nearly unanimously survived dismissal.[1] Further, Cerner repeatedly asserts it did not use patient information for marketing. This is a calculated distraction. Plaintiffs' case is not about *how* Cerner used patient information—it is about Cerner's secret disclosure of patients' health information from inside password-protected and ostensibly private patient portals, to Google without consent. That act of disclosure violates the most fundamental ethical duties that apply to healthcare professionals, as well as state and Federal law, which numerous courts across the country have recognized. *See* Appendix A. More, Cerner has no idea how Google used Plaintiffs' information because Google was not subject to a HIPAA business associate agreement with Cerner, and Google's systems are not public. Indeed, Google routinely designates the most mundane details of its data systems as confidential and proprietary business secrets. Thus, once Cerner ceded control of patients' information to Google, it also lost the ability to audit the access and use of that information, *i.e.*, Cerner has no idea what Google did with the information once in Google's hands.

---

[1] *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) (Cerner claims the court found no standing, but the district court and Ninth Circuit later found standing). Cerner made this same misrepresentation—and was put on notice of the erroneous citation—in *Doe v. MedStar*, D. Md. Case No. 23-cv-01198 at Dkt. 42 at 16. See also *Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 WL 3683001, at *7 (E.D. Mo. July 12, 2016) (Cerner cited the district court's standing analysis and mischaracterized that the case was affirmed, when the Eighth Circuit found the lower court's standing analysis *erroneous* and affirmed on other grounds, *see Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716-17 (8th Cir. 2017)); *Kurowski v. Rush Sys. for Health* to 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (Cerner cited without explaining the progression of the case and how plaintiffs eventually stated a claim after leave to amend). Worse along with *Kurowski*, *every single* case Cerner cited to urge for dismissal with prejudice subsequently permitted amendment to the complaint. Cerner also omits over 30 identical cases stating claims.

For these reasons, the wrongful *disclosure*—independent of *use*—of patient health information has consistently been found to state a claim.

Cerner's challenge to standing, and thus, this Court's subject matter jurisdiction under Rule 12(b)(1), is equally wrong. Cerner relies on inapposite case law and ignores the long line of cases recognizing the privacy injuries at issue. Plaintiffs' injuries are precisely the sort recognized for centuries at common law and codified in statutes at issue here. Plaintiffs have Article III standing.

Finally, Cerner invites the Court to punt this litigation to another court under the first-filed rule. This Court should decline the invitation. Plaintiffs' case does not "rehash a putative class action" from the District Court of Maryland: no class has been certified in the Maryland case, entirely different plaintiffs initiated this action raising distinct causes of action under Missouri law, and the interests of justice favor allowing Plaintiffs to proceed in this Court. This Court should deny Cerner's Motion to Dismiss *in toto.*

## STATEMENT OF FACTS

Plaintiffs and the Class are patients who navigated to and exchanged communications with their healthcare providers through authenticated patient portals provided by Cerner, one of the nation's largest providers of health information technology services. Dkt. 14, ¶¶ 1-2, 20, 26, 40. Cerner designs its patient portals to allow patients to manage their healthcare online, including viewing medical records, scheduling medical appointments, and communicating with their providers, and encourages patients to engage in all these activities. *Id.* at ¶ 2, 27-28, 41. As such, Cerner acts as a "business associate" under HIPAA, subject to the requirements of HIPAA regulations. *Id.* at ¶ 3. Along with their rights under federal and state law, users of Cerner's patient portals possess a reasonable expectation of privacy in their medical information and communications, which Cerner also expressly promised to deliver. *Id.* at ¶¶ 4-5, 23-25, 127-158.

Cerner violated its ethical and legal obligations, including those created by its own promises, by automatically disclosing the contents of patients' communications with their healthcare providers to Google. *Id.* at ¶¶ 3-5, 20-60. These communications included patients' protected health information, such as patient status, patients' use of the patient portals, their request for and receipt of medical treatment, and their review of lab and test results, medications, appointments, and communications with their treating physicians. *Id.* at ¶ 36. Plaintiffs allege Google then exploited the information Cerner disclosed for advertising purposes, including by disseminating patients' health information to additional third parties for retargeting. *Id.* at ¶¶ 4, 31, 61-86. Cerner never obtained consent or alerted patients to its disclosures. *Id.* at ¶¶ 5-10, 32-35, 56. Despite the Department of Health and Human Services' and Google's own warnings, Cerner failed to heed their directives or take its responsibility for protecting patient privacy seriously. *Id.* at ¶¶ 6-10, 80, 83-86.

Worse, Cerner required patients to enable first-party cookies to access its patient portal. *Id.* at ¶ 45. Google's source code redirected identifiers such as patient IP addresses, unique persistent patient cookie identifiers, device identifiers, accounts numbers, URLs, other unique identifying numbers, characteristics, or codes, and browser-fingerprints. *Id.* at ¶¶ 48-49, 87-115. Cerner redirected and disclosed a significant amount of protected health information to Google regarding user actions completed within the patient portal. *Id.* at ¶¶ 50-55, 87-115. In turn, Google connected this sensitive information to the patients' other activities across the internet. *Id.* at ¶¶ 75-76.

Plaintiffs and the Class have suffered injury because of Cerner's conduct, including invasion of privacy and the continued and ongoing risk of irreparable harm from the disclosure of their most sensitive and personal protected health information to tech companies and advertisers. *Id.* at ¶¶ 39, 116-126. Cerner decided to barter Plaintiffs' and the Class Members' health

information to Google to access Google Analytics and related Google tools to enhance its own platforms. *Id.* at ¶ 115. While this may have benefitted Cerner and Google, it harmed patients and violated their rights under state and Federal law.

Plaintiffs allege six statutory claims: violation of the Electronic Communications Privacy Act ("ECPA") (*see* Dkt. 14, Counts I-IV, pp. 41-60), Tampering with Computer Data in violation of Missouri statutes (*see id.*, Count V, pp. 60-64), and Identity Theft under Missouri law (*see id.*, Count VIII, pp. 67-69). Plaintiffs also allege two common law claims for Unjust Enrichment (*see id.*, Count VI, p. 64) and Invasion of Privacy for unreasonable intrusion upon the seclusion of another (*see id.*, Count VII, pp. 65-67).

## ARGUMENT

### I. THE FIRST-FILED RULE DOES NOT APPLY TO THIS CASE

Courts have broad discretion to apply the first-filed rule, which "is not intended to be rigid, mechanical, or inflexible[.]" *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). The rule is "inherently flexible and discretionary to avoid eroding the core considerations of courts' control of litigation: the interest of justice and the convenience of the parties and witnesses." *Marden's Ark, Inc. v. UnitedHealth Group, Inc.*, 2020 WL 13002517, at *8 (D. Minn. Aug. 20, 2020).

Cerner's attempt to stretch the first-filed rule to this case rests on an inaccurate portrayal of the Maryland proceedings. The Maryland federal case was filed on behalf of a class distinct from the class alleged in the earlier Maryland state court *MedStar* action, where Cerner was not a defendant. The Federal case included Cerner as a defendant and asserted additional claims on behalf of different plaintiffs, a different class, and for a different time period. The Maryland federal court stayed the case in May 2023—not under *Colorado River*, which requires substantial similarity, but under its inherent authority. Since entry of that stay, the Maryland federal case has

not progressed. The only substantive ruling was the court's stay order itself. Since the stay, the Maryland state court granted summary judgment in MedStar's favor. That ruling, discussed below, sharply conflicts with decades of case law, and is now on appeal. Meanwhile, Plaintiffs (who are not involved in any Maryland action) filed this case, raising Missouri claims not at issue in the Maryland federal litigation, for violation of MO. REV. STAT. §§ 569.095 & 537.525 (Count V) and identity theft (Count VIII). In circumstances like those here, where different plaintiffs represent the putative class, this Court has explained that the first-filed rule does not apply:

> Importantly, the first-to-file rule only applies where the ***same plaintiff*** attempts to maintain two actions against the same defendant…. Defendants suggest that because this case is a putative class action, the fact that the New Plaintiffs are different individuals from the original Plaintiffs is inconsequential because, in a class action, the classes, and not the class representatives, are compared. But as the Court has emphasized repeatedly, this case is not yet a class action, and indeed, it may never become a class action[.]

*In re Folgers Coffee, Marketing Litig.*, No. 21-2984-MD-W-BP, 2022 WL 989727, at *2 (W.D. Mo. Mar. 9, 2022) (emphasis added) (cleaned up).[2]

Applying the first-filed rule here would undermine, not promote, the purposes of the doctrine. The Maryland federal case has been stayed since May 5, 2023—over two years—with no discovery, no merits rulings, and no progress toward resolution. Its only substantive docket movement was the stay order itself. Moreover, the Maryland case was stayed due to separate

---

[2] *See also Marden's Ark, Inc*, 2020 WL 13002517, at *9 (parallel cases were "stalled" with "little development"); *Martin v. Medicredit, Inc.*, No. 16CV01138, 2016 WL 6696068, at *4 (E.D. Mo. Nov. 15, 2016) (putative class action without complete identity of parties; no class had been certified in the other case, which was in early stages; and resolution of the other case would leave claims unresolved); *Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1064-65 (W.D. Mo. 2020) (declining to invoke the rule: "the potential prejudice to Plaintiff from a stay is apparent. Plaintiff has a right to proceed with his case in this Court in a timely fashion to prevent evidence from becoming stale."; the other case "ha[d] already been delayed for several years by an interlocutory appeal"; and the other case might never be conditionally certified meaning there may never be any duplicative judicial costs).

litigation involving MedStar Health, not Cerner. The claims against Cerner were collateral casualties. By contrast, this case involves different plaintiffs, additional Missouri claims, a Missouri defendant, harm tied to a Missouri healthcare provider, and likely Missouri witnesses.

Transferring or dismissing this case in deference to the Maryland case would indefinitely deprive Plaintiffs of their day in court while memories fade, employees depart, and evidence becomes harder to obtain. It would conserve no resources, resolve no disputes, and would thus undermine the interests of justice. Maryland would also be a less convenient forum for Missouri parties and witnesses, and because the issues and parties do not overlap entirely, resolution in Maryland—if it ever comes—would leave Missouri-specific claims unresolved. For these reasons, the Court should deny Cerner's request to apply the first-filed rule and to dismiss the instant case.

## II. PLAINTIFFS HAVE STANDING & ADEQUATELY ALLEGE INJURY IN FACT

Article III standing requires a plaintiff to have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Cerner only challenges the injury-in-fact element of standing under Rule 12(b)(1) for lack of subject matter jurisdiction.

Cerner distorts Plaintiffs' allegations and the case law, fails to distinguish between Plaintiffs' statutory and common law claims, and cites data *breach* cases instead of relevant information *collection* or *disclosure* cases. Cerner also appears to assert a factual challenge to Plaintiffs' alleged injuries, in a thinly veiled attempt to litigate this case on its merits at the pleadings stage. Cerner's externally submitted "facts" prove nothing. Plaintiffs have standing under Article III to bring each of their claims.

### A. The Unauthorized Disclosure of Health Information is an Injury-in-Fact

Article III injuries "may exist solely by virtue of the statutes creating legal rights, the

invasion of which creates standing," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), given that the plaintiff suffered "a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 331 (2016). Both tangible and intangible harms can qualify as concrete injuries. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021). In assessing whether an intangible harm is concrete, courts "consider Congress' judgment and whether the alleged intangible harm has a close relationship to a harm that traditionally provided a basis for suit in the Anglo-American legal system." *Auer v. TransUnion, LLC*, 902 F.3d 873, 877 (8th Cir. 2018).

Here, Plaintiffs plead privacy harms that have been recognized by courts for over a century. *See* Restatement (Second) of Torts § 652A, cmt. a (1977) (right to privacy first recognized by an American court in 1905); *accord Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) ("there is a common law tradition of lawsuits for invasion of privacy"); *TransUnion,* 594 U.S. at 425 (traditionally recognized harms include reputational harms, disclosure of private information, and intrusion upon seclusion). Unsurprisingly, federal courts consistently find Article III standing to vindicate these historically recognized rights under the ECPA and other statutes that codify common-law privacy interests. *E.g.*, *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) ("[t]he alleged disclosure of the plaintiffs' sensitive health information 'has a close relationship to disclosure of private information, a common-law theory of harm'"); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("the legislative history and statutory text demonstrate that Congress … intended to protect [] historical privacy rights when [it] passed the Wiretap Act [and] SCA. … Thus, these statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("Congress has long provided plaintiffs with the right to

seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private"); *In re Google Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization. Privacy torts have been 'well-ensconced in the fabric of American law.'").

Cerner cites Eighth Circuit cases finding the disclosure of online shopping activity on publicly accessible websites does not create a concrete injury. These cases are inapposite and ignore the crux of the issue here. In *Jones v. Bloomingdales.com*, shopping platforms employed third-party session-replay technology to capture navigation across a publicly accessible website. 124 F.4th 535, 539-40 (8th Cir. 2024). The plaintiffs failed to demonstrate a concrete injury because "no reasonable customer at a *brick-and-mortar store* could claim a privacy interest in her general movements and activities in the *public* parts of that store." *Id.* at 539 (emphasis added). Also, the plaintiffs did not "allege the *interception of private information.*" *Id.* (emphasis added). Here, Plaintiffs' claims do not involve a public website but arise from tracking in an authenticated, password-protected, and ostensibly private online *patient portal*. Reasonable patients like Plaintiffs have a privacy interest in their health information and communications with healthcare providers. Using the analogy from *Jones*—which Cerner highlighted—the technology here is not akin to a camera in a public retailer's store, but rather a camera in a *doctor's office*. More, Plaintiffs allege the *interception of private information*—precisely what the Eight Circuit deemed lacking in *Jones*. For the same reasons, Cerner's reliance on *Adams v. PSP Grp., LLC* is erroneous. There, the plaintiff failed to allege the pet supply retailer-defendant intercepted her private communications or personal information. 691 F. Supp. 3d 1031, 1041 (E.D. Mo. 2023). The Court recognized that, in Missouri, intrusion upon seclusion "involves obtaining or intercepting *private,*

*personal communications or information* about a person in a matter that is highly offensive or unreasonable." *Id.* (emphasis added). The surreptitious collection of information within a private, password-protected medical portal rises to a level that is highly offensive and unreasonable. *See Google Cookie*, 934 F.3d at 325 ("In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion…that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data—is untenable.").

Cerner also argues—with no supporting authority—that "[s]haring information between businesses for business purposes" cannot constitute a historically recognized privacy harm. Of course, the law has never sanitized tortious conduct merely because it was motivated by a desire to profit from it. In the same breath, Cerner cites *Childs* and the Restatement (Second) of Torts 652D to suggest Plaintiffs must allege widespread publication of their health information. Publication is an element of public disclosure of private facts, which Plaintiffs do not claim. Still, the disclosure of information to one of the largest data/advertising companies in the world undoubtedly satisfies this element. Cerner also cites *St. Anthony's Medical* to argue Plaintiffs cannot show their information was obtained through objectionable means. *St. Anthony's* was decided on summary judgment, not on the pleadings, and the court explicitly noted the information was not obtained via deceit. Plaintiffs allege deceit here. *See infra* p. 17.

Cerner then attacks Plaintiffs' damages theories to argue a lack of injury. But "it is crucial not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016). Plaintiffs competently allege privacy harms—the concrete and particularized invasion of their legally protected interests. Those privacy harms confer standing. *See id* at 909-10.

Cerner's cited cases are unhelpful, subsequently overturned, and/or inaccurately

characterized. In *Braitberg,* the Eighth Circuit found no concrete injury where the plaintiff alleged bare assertions of procedural violations and did "not allege that [defendant] ha[d] disclosed the information to a third party, that any outside party ha[d] accessed the data, or that [defendant] has used the information in any way"; the defendant simply retained information past the statutory deadline. 836 F.3d at 930-31. Plaintiffs here allege far more than information *retention*.[3] Cerner also string-cites several data *breach* cases, arguing Plaintiffs must allege misuse or substantial risk of future misuse of the information. These cases involve identity fraud and credit card fraud, which are fundamentally different than the allegations here. E.g., in *In re SuperValu, Inc.*, the Eighth Circuit found plaintiffs lacked standing on future injury claims because they failed to sufficiently allege "a substantial risk of future identity theft" after their credit card information was stolen, which posed a speculative threat, not an injury-in-fact. 870 F.3d 763, 770-72 (8th Cir. 2017). The Court explained the plaintiff, who experienced a fraudulent purchase on his card post-breach, sufficiently alleged misuse of his card information for standing. *Id.* at 773. Even so, the Court explicitly declined to reach a definitive conclusion that "evidence of misuse following a data

---

[3] Cerner's other cited cases are also unhelpful. *See Duqum v. Scottrade, Inc*., 2016 WL 3683001, at *7 (E.D. Mo. July 12, 2016) (data *breach* case where the Eighth Circuit later found the district court's 12(b)(1) analysis erroneous and held the plaintiff had standing but affirmed dismissal under 12(b)(6), *see Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716-17 (8th Cir. 2017)); *Pulliam v. W. Tech. Grp., LLC*, 2024 WL 356777 (D. Neb. Jan. 19, 2024) (data *breach* case, see below); *Rudolph v. Hudson's Bay Co*., No. 18-cv-8472, 2019 WL 2023713 (S.D.N.Y. May 7, 2019) (same); *Svenson v. Google Inc.*, No. 13-cv-04080, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) (summary judgment order). Cerner also cites *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015), but the district court in that case subsequently found standing under the ECPA and privacy tort claims, which the Ninth Circuit upheld on appeal and also found standing on plaintiffs' other claims. *In re Facebook Internet Tracking,* 956 F.3d at 598-99. The Ninth Circuit confirmed that the plaintiffs "adequately alleged that defendant's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information." *Id*. at 599.

breach is necessary for a plaintiff to establish standing." *Id.*[4]

Data *breach* cases involve entirely different theories of liability and causes of action. In breach cases, plaintiffs attempt to attribute liability, often times for the potential of future harm like identity theft, to a defendant who negligently maintained private information when a separate bad actor stole that information. In contrast, privacy cases involve a defendant's liability for invading a plaintiff's privacy *in and of itself*. The standing analysis focuses on privacy rights and the harms from this invasion. Thus, injury in privacy cases does not hinge on subsequent misuse.[5] Here, Plaintiffs allege Cerner willingly shared Plaintiffs' information with Google without consent, thereby inflicting a privacy harm. Nothing more is required to establish standing. *J.C. v. Cath. Health Sys. Inc*., 2024 WL 5136236, at *6 (W.D.N.Y. Aug. 29, 2024) (allegations defendant hospital "deliberately forwarded [plaintiff's] electronic communications containing PII and PHI to Facebook, Google, and other third parties" sufficient for standing); *Smith*, 2024 WL 3338941, at *4 (injury in fact pleaded based on "alleged disclosure of…medical information."); *Frasco v. Flo Health, Inc*., 2022 WL 21794391, at *1 (N.D. Cal. June 6, 2022) ("Named plaintiffs have Article III standing to sue because they plausibly alleged the disclosure of private information.").

## III. PLAINTIFFS' PLAUSIBLE ALLEGATIONS SURVIVE AND SATISFY RULE 12(B)(6)

Plaintiffs' allegations are sufficient for each of their claims to survive Rule 12(b)(6).

---

[4] To support the same proposition, Cerner quotes *Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018), and *McMorris v. Carlos Lopez & Assocs*., 995 F.3d 295 (2d Cir. 2021). Both cases are equally distinguishable. In *Hutton*, the Fourth Circuit addressed identity theft and found standing where plaintiffs already suffered credit card fraud. 892 F.3d at 622. In *McMorris*, the Second Circuit developed a "non-exhaustive" list of factors to assess Article III injury-in-fact, as Cerner references. 995 F.3d at 302-03. However, the Court explicitly stated that the factors apply to "allegations that plaintiffs are at an increased risk of identity theft or fraud based on unauthorized data disclosure." *Id.* at 303. This is not the basis of Plaintiffs' claims.

[5] Even so, Plaintiffs allege the use of protected health information to Cerner's personal benefit and for Google's marketing purposes. *See* Dkt. 14, ¶¶ 4, 8, 9, 32, 58, 123.

Indeed, courts considering directly analogous claims under Federal and Missouri law have consistently ruled against defendants at the motion to dismiss stage. *See Doe v. Boone Health, Inc.*, 2023 WL 4996117 (Mo. Cir. July 20, 2023); *Doe v. Cass Regional Med. Ctr.*, 2024 WL 1771863 (Mo. Cir. Apr. 1, 2024); App. A (*Doe v. Mosaic Health Sys.*, 2024 WL 6823992 (Mo. Cir. Oct. 1, 2024); *Doe v. Missouri Delta Med. Ctr.*, No. 23PE-CC00038 (Mo. Cir. Ct. Pemiscot Cnty. Feb. 26, 2024); *Doe v. St. Luke's Episcopal Presbyterian Hospitals*, No. 23SL-CC01593 (Mo. Cir. Ct. St. Louis Cnty. Dec. 28, 2023); *BJC*, No. 2222-CC09151-01 (Mo. Cir. Ct. St. Louis City)).

### A. Plaintiffs Adequately Pled a Cause of Action Under the ECPA

Cerner claims Plaintiffs' ECPA claims fail because they do not plausibly allege Cerner intercepted or disclosed communications "contents." The ECPA broadly defines "contents" as "*any* information concerning the substance, purport, or meaning" of any wire, oral, or electronic communication. 18 U.S.C. § 2510(8) (emphasis added). As Cerner acknowledges, Plaintiffs allege Google source code disclosed to Google all communication content inside patient portals, including log-ins, sign-ups, and actions taken inside the portal, including queries regarding health conditions and treatments. Dkt. 14, ¶¶ 50, 184-185. E.g., Plaintiff Whitby alleges Cerner disclosed communication content related to his head and neck cancer. *Id.*, ¶ 59. These are plausibly alleged facts, not legal conclusions. Cerner's claim that it does not disclose some of the information to Google is a fact dispute not before the Court on a motion to dismiss. Plaintiffs allege Cerner intercepted and disclosed "contents" to Google through the source code within its patient portals. At this stage, the Court must accept these allegations as true. *See Mekhail v. North Memorial Health Care,* 726 F. Supp. 3d 916, 925-26 (D. Minn. 2024).

Cerner's "contents" argument has no support for the types of URLs at issue in this case. It has long been understood that "content" under the ECPA protects "movement around the Internet to different websites and so on," such as "the second and third and below level URLs, which are

indications of, once you visit a website, what exactly you are looking at on the website." H.R. Rep. No. 107-236 at 294 (PATRIOT Act legislative history). That is why nearly all courts to have considered the type of detailed full-string URLs at-issue in this case include "contents." *See In re Pen Register App.*, 396 F. Supp. 2d 45, 49 (D. Mass. 2005) ("Contents' of communications includes subject lines, application commands, search queries, requested file names, and file paths."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795-96 (N.D. Cal. 2022) (patient portal "log-in buttons" are "contents); *Doe I v. Google LLC*, 2025 WL 1616720, at *3 (N.D. Cal. June 6, 2025) (URLs with "both the path and the query string" and a button-click for "bill pay" are contents); *see also Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *13 (E.D. Cal. June 9, 2025); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024); and *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023). Even *Zynga* and *Katz-Lacabe*, cited by Cerner, support Plaintiffs. *Zynga* explained "contents" includes "search term[s] or similar communication[s]." The Ninth Circuit later explained, full-string URLs (like those at-issue here), present a much different question than the types of URLs rejected in *Zynga*. *In re Facebook, Inc. Internet Tracking Litig*, 956 F.3d at 605. Further, *Katz-Lacabe* found Plaintiffs stated a claim. *Katz-Lacabe v. Oracle America, Inc.*, 2023 WL 6466195 (N.D. Cal. Oct. 3, 2023), *aff'd*, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023). Cerner's other cases are inapposite and involved non-content information such as call length, origination, date, and time.[6] Finally, *Gilday v. Dubois*, 124 F.3d 277, 296, n. 27 (1st Cir. 1997) is a pen register case. The more appropriate authority is *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) ("Contents" includes "personally identifiable

[6] *U.S. v. Reed*, 575 F.3d 900 (9th Cir. 2009); *U.S. v. Dickerman*, No. 16-CR-00258, 2017 WL 11485604 (E.D. Mo. Sept. 26, 2017); *U.S. v. Hoeffener*, No. 4:16–CR–374, 2018 WL 2996317 (E.D. Mo. May 9, 2018).

information such as a party's name, date of birth, and medical condition."). There is also no support for Cerner's proposition that an action conveying substantive information cannot be content. *See U.S. v. Telecom Assoc. v. FCC*, 227 F.3d 450 (D.C. 2000) ("Post-cut-through dialed digits" are "contents"); *Brown v. Waddell*, 50 F.3d 285 (4th Cir. 1995) (post-cut through dialed digits are content); *Rainsy v. Facebook*, 311 F. Supp. 3d 1101, 1114 (N.D. Cal. 2018) (Facebook 'Like' is "content.") (citing *Bland v. Roberts*, 730 F.3d 368, 385-86 (4th Cir. 2013) ("clicking on the 'like' button … is itself a substantive statement")); *In re Certified Question of Law*, 858 F.3d 591 (FISC 2016) (discussing relation between ECPA "content" v. pen register data); *S.D. v. Hytto Ltd*., 2019 WL 8333519, at *7 (N.D. Cal. May 15, 2019) ("That the internet is used to effect a … communication does not change the essential character of that communication."). While Cerner claims it did not divulge the entirety of patient communications on its patient portal to Google, Cerner's conduct is not immunized. The ECPA defines content as "*any* information regarding the substance, purport, or meaning" satisfies the element. For example, a captured and disclosed click to confirm or arrange an appointment within Cerner's patient portal could be "content" under the ECPA as such action represents a substantive statement harboring meaning in and of itself.

### B. Plaintiffs Adequately Pled a Cause of Action for Tampering with Computer Data in Violation of MO. REV. STAT. §§ 569.095 & 537.525

Under the Missouri Computer Tampering Act ("MCTA"), "[a] person commits the offense of tampering with computer data if he or she knowingly and without authorization or without reasonable grounds to believe that he has such authorization" modified or discloses computer data or receives, retains, uses, or discloses any data known or believed to be obtained in violation of the statute. MO. REV. STAT. § 569.095(1). The owner of the computer system, network, program, service, or data may file a civil action against any violator of the MCTA. MO. REV. STAT. § 537.525.

Plaintiffs allege Cerner disclosed Plaintiffs' health information to Google despite its duty

to refrain from disclosure without informed consent. Cerner advances a factual argument such information was not disclosed, which is contrary to the well-pled allegations and not appropriately addressed at the pleadings stage.

Cerner also argues it only sent "de-identified" information. This is incorrect as a matter of law. See *Doe I v. Google LLC*, 2025 WL 1616720 at *2 ("[U]nder the plain language of the relevant HIPAA regulations, all of the information at issue here was identifiable."), citing 45 C.F.R. § 165.514(b)(2)(i)(O) and noting that "for health information to be considered de-identified, IP addresses must be removed." *Id*. Patients alleging identical claims against hospitals in Missouri have survived in every case. *See Boone,* 2023 WL 4996117, at *2; *Cass Regional*, 2024 WL 1771863; *Mosaic*, 2024 WL 6823992; *BJC*, No. 2222-CC09151-01 (App A., p. 3-11); *St. Luke's*, No. 23SL-CC01593 (*Id.*, p. 13); *Missouri Delta*, No. 23PE-CC00038 (*Id.*, p. 12). Cerner omits this case law and instead cites unfitting cases that apply different statutes with distinct elements not at issue here. *See Brodsky v. Apple*, 445 F. Supp. 3d 110, 131-32 (N.D. Cal. 2020) (evaluated California Computer Crime Law plaintiff challenged the login method without alleging defendant otherwise accessed login activities without authorization); *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1176-77 (D. Nev. 2021) (assessed Nevada Computer Crime Law and involved publicly available websites not requiring a password); *Cf. Anzaldua v. Ne. Ambulance and Fire Prot. Dist.*, 793 F.3d 822, 838-39, 842-43 (8th Cir. 2015) (plaintiff stated MCTA claim for defendant's email use that exceeded authorization).

### C. Plaintiffs Adequately Pled Intrusion Upon the Seclusion of Another

In Missouri, "[o]ne who intentionally intrudes, physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *See Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. Banc 1983) (quoting Restatement (Second) of Torts

§ 652B). Cerner argues that Plaintiffs failed to allege an intrusion or that such conduct would be "highly offensive" to a reasonable person. Furthermore, Cerner claims that Plaintiffs merely allege disclosure of patient portal information, not interference with their privacy.

Cerner ignores that Plaintiff's intrusion claim is also based on Cerner's (1) knowingly and secretly deploying Google source code on patient portal login pages and inside its patient portals, and (2) trespassing upon Plaintiffs' personal and private property via placement of Google cookies on patients' computing devices and disguising them as belonging to Cerner. *See* Dkt. 14, ¶¶ 48, 193. These separate allegations work in tandem with Cerner's subsequent unauthorized disclosures to Google. Plaintiffs have also adequately and extensively alleged that the confidentiality of the at-issue information is protected by law, and Plaintiffs possess reasonable expectations in the patient-provider relationship and Cerner's express promises.

Plaintiffs allege among other things that Cerner unreasonably obtained Plaintiffs' medical records through deception by disguising Google's cookies as their own and Cerner's assurances of a secure, confidential patient portal that required authentication for access. Missouri courts identify deception as an objectionable and unreasonable method of obtaining information. *See St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 610 (Mo. Ct. App. 1998) (unlike here, defendant did not unreasonably obtain defendant's medical records through deception, illegal activity, or other unreasonable methods); *see also Corcoran v. Sw. Bell Telephone Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1978) (submissible case for intrusion upon seclusion where defendant obtained former in-laws' telephone bill by deception to learn the whereabouts of ex-husband).

Here, as discussed above, the deceit has multiple layers. Cerner falsely promised confidentiality and security in its Patient Portal. Dkt. 14, ¶¶ 3, 25, 29, 35, 129, 200, 311. Cerner also gained unauthorized access and trespassed upon patients' computing devices by disguising

Google cookies as belonging to Cerner. *Id.* at ¶¶ 9, 43, 44, 48, 65, 104-105, 190. And Cerner employed Google source code onto patient computing devices, directing the devices to send the confidential information within the patient portal, *i.e.*, patients' identifiers and communications content to Google.

In general, moreover, the degree to which a reasonable person would find the intrusion offensive "is a fact question unsuitable for resolution in a motion to dismiss," and whether a reasonable person would consider Cerner's intrusion highly offensive is "properly reserved for the factfinder at a later stage." *Cooper v. Hutcheson,* 472 F. Supp. 3d 509, 516 (E.D. Mo. 2020). Healthcare providers and third-party interceptors facing similar claims around the country have nearly universally lost such arguments on a motion to dismiss.

**D. Plaintiffs Adequately Pled Identity Theft Under MO. REV. STAT. § 570.223**

Under Missouri law, "[a] person commits the offense of identity theft if he or she knowingly and with the intent to deceive or defraud obtains, possesses, transfers, uses, or attempts to obtain, transfer or use, one or more means of identification not lawfully issued for his or her use." MO. REV. STAT. § 570.223(1). Civil actions are permitted by "the person to whom the identifying information belonged." MO. REV. STAT. § 570.223(4).

Cerner definitively states that Plaintiffs fail to state a claim for identity theft because Cerner is a company and only a "person" can be held liable for identity theft in Missouri. But this is incorrect because it ignores the statute. Cerner wholly relies on the analysis in *Smith v. Curators of Univ. of Mo*., No. 17-4016-CV, 2017 WL 11492763, at *7 (W.D. Mo. Dec. 20, 2017), which interpreted "person" in favor of defendant under the rule of lenity after identifying an ambiguity in the word "person" which is not explicitly defined in Chapter 570. Even the court in *Smith* explained that Missouri courts use varying application of the definition of "person" in § 1.020, which announces that the "word 'person' may extend and be applied to bodies politic and

corporate, and to partnerships and other unincorporated associations." MO. REV. STAT. § 1.020(12).

The word person is defined in § 1.020, making its plain meaning unambiguous and not limited to its colloquial meaning. In addition, in § 570.010, the definitions of "dealer" and "merchant" use the word "person" in describing someone in the "business of buying or selling goods" or someone "who deals in goods," and § 570.135 expressly excludes corporations from the reach of the credit fraud portion of the chapter. As the *Boone Health* Court explained, "[i]f 'persons' only included natural persons, that exclusion in § 570.135 would be meaningless surplusage." *Doe v. Boone Health, Inc.*, 2023 WL 4996117, at *2. Indeed, claims for Identity Theft under § 570.223 have proceeded against a corporate entity in other cases in this District. *See Lewis v. Navient Solutions, Inc.*, No. 4:13-CV-00826, 2015 WL 10936762, at *5-6 (W.D. Mo. Jan. 22, 2015) (claims under § 570.223 proceeded against Navient Solutions, Inc. before dismissal on summary judgment); *Morris v. Northland Grp., Inc.*, No. 15-0888-CV, 2016 WL 3562144, at *4 (W.D. Mo. June 24, 2016) (claims against a debt collection agency proceeded until summary judgment); *Campbell v. Accts. Receivable Mgmt., Inc.*, No. 4:14-cv-00793, 2015 WL 4425823, at *5 (W.D. Mo. July 20, 2015) (claims against a debt collection agency proceeded until summary judgment).[7] And courts considering the meaning of the term "person" in related statutes have confirmed that it encompasses more than just natural persons. *E.g.*, *Doe v. Boone Health, Inc.*, 2023 WL 4996117, at *2 (term "person" in Missouri Computer Tampering Act includes corporate entities; "[e]xtending the term 'person' in Mo. Rev. Stat §§ 569.095, 537.525 would not be

---

[7] In *Doyle v. Trans Union, Delaware*, the Eighth Circuit also evaluated a claim under the Missouri identity-theft statute. 638 F. App'x 559, 560 (8th Cir. 2016). In doing so, the court did not take issue or address Trans Union's classification as a "person" under the statute, rather, the court found that Trans Union was not liable because it was complying in good faith with two court judgments to collect a debt—an exemption from liability under the statute.

repugnant to the legislative intent reflected in those statutes."). Cerner even cites to *Morris* and *Campbell* to argue its next point, that it had a permissible and ordinary business purpose for obtaining information from Plaintiffs.

Cerner claims it is absolved of liability because it had a permissible and ordinary business purpose (or reason to believe it had a permissible purpose) for obtaining information from Plaintiffs and sharing the information concerning their patient portals with Google. But whether its purpose was "permissible" is a question of fact, which is why the cases Cerner relies on for permissible purpose evaluate summary judgment motions. Worse, Cerner will eventually lose on this point as a matter of law. *See* 5 C.F.R. § 164.508 (requiring patients' written authorization to disclose PHI; *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. DEP'T OF HEALTH & HUMAN SERVICES (2022) ("[T]he Privacy Rule does **not** permit disclosures of PHI to a tracking technology vendor based solely on a regulated entity informing individuals in its privacy policy, notice, or terms and conditions of use that it plans to make such disclosures."). Cerner next argues that, because its actions were permissible, it could not have an "intent to deceive or defraud." Dkt. 21, p. 23. But this ignores that "[f]raudulent intent is [also] a question of fact." *SL EC, LLC v. Ashley Energy, LLC*, 561 F. Supp. 3d 802, 823 (E.D. Mo. 2021) (applying rule to fraudulent transfers law).

**E. Plaintiffs Adequately Pled Unjust Enrichment**

Unjust enrichment has three elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Lizama v. Venus Lab'ys, Inc.,* 679 F. Supp. 3d 848, 867 (E.D. Mo. 2023). Plaintiffs sufficiently plead these elements. Dkt. 14, ¶¶ 283-286.

Cerner claims courts regularly dismiss unjust enrichment claims from data-sharing cases, but those cases are distinguishable. *See Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 852

(N.D. Ill. 2024) (unjust enrichment claim dismissed because state consumer fraud claim failed as plaintiffs were not consumers); *In re NCB Mgmt. Servs., Inc. Data Breach Litig*., 748 F. Supp. 3d 262, 277-279 (E.D. Pa. 2024) (plaintiffs adequately pleaded indirect conferral of their personal identifying information on defendant but only vaguely asserted "commercial gain"); *In re Amer. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig*., No. 19-md-2904, 2021 WL 5937742, at *18 (D.N.J. Dec. 16, 2021) (plaintiffs vaguely asserted "commercial gain").

Moreover, Cerner ignores the many information privacy cases that are far more on point where such claims are allowed to proceed. *See e.g. Doe v. Boone Health, Inc*., 2023 WL 4996117 (unjust enrichment claim survived dismissal where plaintiffs conferred a benefit on defendants in the form of valuable and confidential medical information); *In re Google Loc. Hist. Litig.,* 514 F. Supp. 3d 1147, 1159-60 (N.D. Cal. 2021) (plaintiffs plausibly alleged Google received a benefit from its collection and storage of comprehensive location and retention of benefit was unjust); *Riganian v. LiveRamp Holdings, Inc*., --- F. Supp. 3d ---, 2025 WL 2021802, at *12-13 (N.D. Cal. July 18, 2025) (sufficient allegations of violation of privacy rights to generate revenue without plaintiffs' consent); *Katz-Lacabe*, 2023 WL 6466195, *aff'd*, 2023 WL 7166815; *See* also *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) ("[E]ven if the plaintiffs suffered no economic loss from the disclosure of their information, they may proceed at this stage on a claim for unjust enrichment to recover the gains that [defendant] realized from its allegedly improper conduct.").

## IV. WITH-PREJUDICE DISMISSAL UNDER RULE 12(b)(6) IS ENTIRELY UNWARRANTED AND UNDERMINED BY CERNER'S CITED AUTHORITY

Cerner urges that dismissal of any of Plaintiffs' claims should be imposed *with* prejudice. Dismissal with prejudice is an extreme measure and is only proper "if amending the pleading would be futile" or when "a plaintiff has shown persistent pleading failures despite receiving an

opportunity to amend." *Kraft v. Essentia Health*, 604 F. Supp. 3d 813, 826-27 (D.N.D. 2022). Such is not the case here. The cases highlighted by Cerner to support that "dismissal with prejudice would be consistent with the landscape of 'pixel' litigation" undermine Cerner's own argument. Dkt. 21, p. 32. Cerner cites *Kurowski v. Rush Sys. for Health* to bolster its dismissal with prejudice argument. 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (*Kurowski II)*. In *Kurowski II*, the court dismissed several counts from the amended complaint, but two claims survived the motion to dismiss. *Id.* at 853-54. Later, the plaintiff moved for leave to file a second amended complaint, which the court permitted. *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (*Kurowski III*). Upon amendment, the court found that "unlike the previous versions, [plaintiff's proposed second amended complaint] plausibly states a claim for relief under the Wiretap Act." *Id.* If dismissal is warranted—it is not—*Kurowski II* and *III*, along with the other cases referenced by Cerner, wholly endorse dismissal *without* prejudice. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. 2024) (the court still *allowed amendment* despite several chances already given to address identified deficiencies); *Murphy v. Thomas Jefferson Univ. Hosps., Inc*., No. 22-4674, 2023 WL 7017734, at *1 (E.D. Pa. Oct. 10, 2023) (motion to dismiss granted *without* prejudice even when the plaintiffs proposed a second amended complaint that also failed to state a claim); *J.C. v. Catholic Health Sys. Inc.,* 2024 WL 5136236 at *10 (court recommended plaintiff be allowed to amend complaint to rectify the identified issues).

## CONCLUSION

This Court should deny Cerner's Motion to Dismiss in its entirety, including its challenges to standing, failure to state a claim, and invocation of the first-filed rule.

Date: September 26, 2025

Respectfully submitted,

*/s/Eric S. Johnson*______________
Eric S. Johnson
ejohnson@simmonsfirm.com
Jason 'Jay' Barnes
jaybarnes@simmonsfirm.com
**SIMMONS HANLY CONROY LLP**
231 S. Bemiston Avenue, #525
St. Louis, Missouri 63105
Telephone: (212) 784-6400

***Counsel for Plaintiffs and the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Date: September 26, 2025

*/s/Eric S. Johnson*_____________
Eric S. Johnson
ejohnson@simmonsfirm.com
**SIMMONS HANLY CONROY LLP**
231 S. Bemiston Avenue, #525
St. Louis, Missouri 63105
Telephone: (212) 784-6400

***Counsel for Plaintiffs and the Putative Class***