**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION**

| | | |
|---|---|---|
| GARY WHITBY and JEREMY PAQUETTE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 25-04087-CV-C-BP |
| | ) | |
| CERNER CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER (1) DENYING IN PART AND DEFERRING IN PART DEFENDANT'S MOTION TO DISMISS AND (2) DIRECTING THE PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING**

Defendant Cerner Corp. ("Cerner") designs computer and information systems for healthcare providers, including "patient portals"—systems that provide patients with online access to their medical providers' systems, through which they can (for instance) make appointments and review their medical information. Plaintiffs' Amended Complaint advances several federal and state claims based on their allegation that Cerner-designed patient portals divulge information about patients to Google,[1] and pending is Cerner's Motion to Dismiss. After considering the parties' arguments, the Motion to Dismiss, (Doc. 20), is **DENIED IN PART** and **DEFERRED IN PART**, and the parties are directed to submit supplemental briefing as outlined below.

## I. BACKGROUND[2]

One of Defendant's arguments is based on the connection between this case and litigation occurring in Maryland. In January 2020, the case of *Doe v. MedStar Health, Inc.*, Case No. 24-

[1] The Complaint specifies the information was divulged to Google and does not allege the information was divulged to any other third parties.

[2] All page numbers for documents filed with the Court are those generated by the CM/ECF system.

C-20-00591, (the "Maryland state case") was filed in the Circuit Court for Baltimore City. The plaintiffs in that case[3] asserted that MedStar Health ("MedStar") used Cerner information technology services; and, because systems created by Cerner revealed patient information to third parties, MedStar was liable under various provisions of Maryland law for those disclosures. The plaintiffs sought to pursue their claims on behalf of a class of Maryland residents who used MedStar's online patient portal, but in March 2023, the state trial court denied a motion for class certification, and in July 2024 it granted MedStar summary judgment on all remaining claims. The plaintiffs appealed, and the Maryland Court of Appeals heard oral argument on November 12, 2025.[4]

Meanwhile, in May 2023—after the state court denied class certification but before it granted summary judgment—a suit was filed against MedStar and Cerner in the United States District Court for the District of Maryland.[5] That case (the "Maryland federal case") is captioned *Doe I v. Medstar Health, Inc.*, and is Case No. 1:23-cv-01198-JRR.[6] The Maryland federal case seeks to hold both MedStar and Cerner liable for the disclosure of information about patients and asserts both federal and state claims. The Complaint also announces the plaintiffs will seek certification of two classes: (1) a nationwide class of all individuals who used a patient portal provided or developed by Cerner (regardless of the health care provider's identity), and (2) a class of all MedStar patients who used MedStar's patient portal. All the federal claims and

[3] The plaintiffs in the Maryland state case changed over time; it is not necessary to detail these changes other than to note that the plaintiffs in this case were never plaintiffs in the Maryland state case.

[4] The case number in the Maryland Court of Appeals is ACM-REG-1033-2024.

[5] One of the plaintiffs from the state case was originally a plaintiff in the Maryland federal case, but that plaintiff was later dismissed from the Maryland federal case. Neither of the plaintiffs in this case were ever plaintiffs in the Maryland federal case.

[6] The Court takes judicial notice of the filings in the Maryland federal case, including the transcript of the hearing held on October 11, 2023.

some state claims are asserted by both classes, and some state claims are asserted by only the MedStar class. At least some of the state claims advanced in the Maryland federal case are the same as those asserted in the Maryland state case.

MedStar, joined by Cerner, filed a Motion to Stay in the Maryland federal case; they argued that a stay was justified by the relationship between the two Maryland cases and invoked (1) the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and (2) the court's inherent authority. In October 2023, the judge in the Maryland federal case (the Honorable Julie R. Rubin) held a hearing and concluded that *Colorado River* did not apply but exercised her inherent authority to stay the case pending resolution of the appeal in state court. This decision was based on the belief that allowing the state courts to resolve disputed issues of Maryland law would conserve judicial resources. The Maryland federal case has remained stayed since October 2023 (because the Maryland state courts have not issued a final ruling regarding the disputed issues of Maryland law).

Plaintiffs filed this suit in April 2025 against Cerner. Like the two Maryland cases, it is based on Plaintiffs' allegation that the systems Cerner develops and sells to medical providers divulges information to Google. Plaintiffs assert claims under federal and Missouri law; specifically, the Amended Complaint asserts the following claims:

| | |
|---|---|
| Count I | Violation of 18 U.S.C. § 2511(1)—the Electronic Communications Privacy Act, |
| Count II | Violation of 18 U.S.C. § 2511(3)—another provision of the Electronic Communications Privacy Act, |
| Count III | Violation of 18 U.S.C. § 2702(a)(1)—the Stored Communications Act, |

| | |
|---|---|
| Count IV | Violation of 18 U.S.C. § 2702(a)(2)—another provision of the Stored Communications Act, |
| Count V | Tampering with computer data, in violation of §§ 537.525 and 569.095 of the Revised Statutes of Missouri, |
| Count VI | Unjust enrichment/quantum meruit, |
| Count VII | Invasion of privacy, and |
| Count VIII | Identity theft, in violation of § 570.223 of the Revised Statutes of Missouri. |

All claims are asserted on behalf of a nationwide class. (Doc. 14, ¶ 164.) Additional facts from the Amended Complaint will be set forth as necessary below.

## II. DISCUSSION

Cerner has filed a Motion to Dismiss, generally contending the Complaint should be dismissed because:

1. the Maryland federal case was filed first,
2. Plaintiffs lack standing, and
3. Plaintiffs have failed to state a claim for which relief can be granted.

In this Order, the Court (1) denies the Motion to the extent it invokes the first-filed rule, (2) defers consideration of the standing arguments pending receipt of additional briefing from the parties, and (3) defers consideration of whether Plaintiffs have stated a claim until after it resolves the standing issue.

## A. The First Filed Rule[7]

When the same or parallel disputes are filed in two different federal district courts, the case that is filed first is ordinarily the one that should proceed. *E.g.*, *Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 & n.3 (8th Cir. 1999); *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993); *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir. 1990). This rule promotes judicial economy: it is more efficient and sensible to allow a single court to resolve issues when two cases are the same or parallel, and the first-filed rule is an expedient rule to apply. *Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, 2017 WL 9717215, at *2 (W.D. Mo. July 6, 2017). In determining whether the first-filed rule justifies dismissing or transferring this case in favor of the Maryland federal case, two issues must be resolved: (1) whether the two cases are parallel, and, if they are, (2) whether there are any reasons to not apply the first-filed rule.

While the Eighth Circuit has not specifically defined what it means for cases to be parallel in this context, in other contexts addressing whether one court should defer to another it has determined that suits are parallel if they involve substantially the same parties litigating substantially the same issues. *E.g.*, *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 724 (8th Cir. 2019); *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013); *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005). Starting with the similarity of the claims, the Court observes that the federal claims in this case are the same as

[7] Cerner's arguments about standing are jurisdictional in nature and therefore must be addressed before the merits. *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). However, the first-filed rule is not related to the merits. Moreover, while "a court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a)," *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 957 (8th Cir. 2005), a transfer (or dismissal) based on the first-filed rule is not based on § 1404 or any considerations about venue. *Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, 2017 WL 9717215, at *2 (W.D. Mo. July 6, 2017). The first-filed rule is simply a means of promoting judicial efficiency by ensuring that only one federal district court resolves issues in parallel cases, regardless of whether they relate to jurisdiction, venue, or the merits.

those in Maryland federal case. The state claims in the cases are different (because this case involves state claims based on Missouri law and the Maryland federal case involves state claims based on Maryland law), but the general nature of the state claims is similar and the fact that they are not identical does not preclude a finding that the cases are substantially similar for purposes of the first-filed rule, particularly given that the factual and legal theories are virtually identical. *E.g.*, *Myers v. Walmart, Inc.*, 2025 WL 70987, at *1 (W.D. Ark. Jan. 10, 2025); *Mishkin v. Volkswagen Grp. of Am., Inc.*, 2022 WL 18664851, at *2 (E.D. Mo. Oct. 11, 2022); *Wright v. Walden Univ., LLC*, 2017 WL 1435717, at *3 (D. Minn. Apr. 21, 2017). After comparing the claims, legal theories, and factual allegations in the two federal cases, the Court concludes that they involve substantially similar claims.

The Court also concludes that substantially the same parties are involved. Plaintiffs emphasize that they are not named as plaintiffs in the Maryland federal case. However, they are members of the nationwide class the plaintiffs in the Maryland federal case intend to represent once the stay in that case is lifted. In the context of a class action, this qualifies as substantially similar parties for purposes of the first-filed rule. "[I]n the putative class context, requiring an exact identity among the parties and claims would make it so the first-filed rule would never apply, undercutting its purpose of judicial efficiency." *Evans v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 12600285, at *1 (W.D. Mo. Feb. 12, 2014) (quoting *Worthington v. Bayer Healthcare, LLC*, 2012 WL 1079716, at *4 n.3 (D.N.J. Mar. 30, 2012)); *see also Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790-91 (6th Cir. 2016); *Doe v. Iowa Health Sys.*, 2019 WL 13217438, at *6 (S.D. Iowa Sep. 26, 2019); *Wright*, 2017 WL 1435717, at *3; *Martin v. Cargill, Inc.*, 2014 WL 12609656, at *1 (D. Minn. May 2, 2014). In affirming that the proper inquiry is

---

*Id*. Here, the question is whether the issue of standing should be resolved in this Court or in the Maryland federal case; that issue should (and logically must) be resolved before standing is addressed.

whether there is substantial similarity between the classes (as opposed to the class representatives), the Sixth Circuit explained:

> The reason is fairly straightforward: if the opposite rule were adopted, the first-to-file rule might never apply to overlapping class actions as long as they were filed by different plaintiffs. Litigating a class action requires both the parties and the court to expend substantial resources. Perhaps the most important purpose of the first-to-file rule is to conserve these resources by limiting duplicative cases. To serve this purpose, we must evaluate the identity of the parties by looking at overlap with the putative class.

*Baatz*, 814 F.3d at 791. Here, the putative class is substantially similar to the putative class in the Maryland federal case.

Having concluded that the first-filed doctrine's requirements are met, the next question is whether the Court should apply it. The Court concludes it should not. As stated earlier, the first-filed rule dictates that when parallel cases are pending in two different federal district courts, the first one to be filed should proceed and the court with the second-filed case should defer (by transferring the case or dismissing it). "The rule is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration," *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985), and it "yields to the interest of justice, and will not be applied where a court finds compelling circumstances supporting its abrogation." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993).

The Court concludes compelling circumstances exist here because deferring to the Maryland federal case will not serve the first-filed rule's purposes and will be contrary to principles of sound judicial administration. *See*, *e.g.*, *Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1064-65 (W.D. Mo. 2020). Despite having been filed first, there has been no exchange of Rule 26 disclosures or other discovery in the Maryland federal case, and the only legal issue

resolved to date is whether the case should be stayed while the judgment in the Maryland state case is appealed—which will not be an issue in this case. Thus, nothing in this case will duplicate anything the parties have done in the Maryland federal case. Moreover, deferring would require Plaintiffs—and all other putative class members—to continue delaying their efforts to obtain relief for an indeterminate amount of time. And the reason for that delay—to provide Maryland courts an opportunity to resolve questions of Maryland law that are at issue in the Maryland federal case—relates to claims against MedStar and has nothing to do with the claims asserted against Cerner by the Plaintiffs or the putative class members in this case.

Accordingly, after comparing this case to the Maryland federal case, the Court concludes they involve substantially the same parties and substantially the same claims or issues. Nonetheless, the Court finds compelling circumstances that justify declining to apply the first-filed rule, so the rule will not be applied and the case will not be dismissed (or transferred).

## B. Standing

Cerner argues that Plaintiffs lack standing to assert their claims. The Court defers consideration of this issue and directs the parties to submit supplemental briefing as outlined below.

"[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). Cerner focuses on the first requirement, and the Court will do so as well.

"An injury in fact must be actual or imminent and must also be concrete and particularized." *E.g.*, *id.* at 339. Plaintiffs do not argue that they have standing due to a tangible

injury (such as the loss of money or personal injury); they allege they have suffered intangible harm because "[s]ensitive and confidential information that Plaintiffs intended to remain private is no longer private." (Doc. 14, ¶ 12(a).) And in opposing dismissal, they similarly discuss the disclosure of their private information, (*see* Doc. 25, pp. 14-17),[8] and argue that the violation of such privacy interests support standing.

> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.

*Id.* at 340-41. Plaintiffs' claims need not precisely match a common law *claim*; the question is whether the alleged *injury* is close to one that would support a common law claim. "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 433 (2021); *see also*, *e.g.*, *Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865, 868 (8th Cir. 2025); *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136-37 (8th Cir. 2023). However, beyond mentioning the concept of privacy generally, and specifically referring to resulting harms attributed to reputation, disclosure of private information, and intrusion on seclusion, (*e.g.*, Doc. 25, p. 15), Plaintiffs do not (1) clearly state what common law harm or cause of action they are using as a comparator or (perhaps more

[8] As Cerner points out, the Amended Complaint asserts four possible injuries. (*See* Doc. 14, ¶ 12(b) – (d).) But in opposing Cerner's Motion, Plaintiffs address only their theory that private information was conveyed to third parties, so they have abandoned or waived the right to argue that the other possible injuries (monetary damage from the use of Plaintiffs' information, erosion of the doctor/patient relationship, and lost value of medical services) demonstrate an Article III injury.

importantly) (2) discuss how the facts alleged justify use of any such comparator to establish an injury.

While "the kind of harm to privacy associated with an intrusion upon seclusion can constitute a concrete injury for standing purposes, that doesn't mean that every plaintiff who comes to court alleging such a harm gets in the courthouse door." *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 539 (8th Cir. 2024). *Jones* acknowledged that "harms traditionally recognized as providing a basis for lawsuits in American courts like reputational harms, disclosure of private information, and intrusion upon seclusion" can be concrete. *Id.* at 538; *see also*, *e.g.*, Restatement (Second) of Torts §§ 652A, 652B, 652C, 652D, 652E.[9] But as *Jones* demonstrates, Plaintiffs' allegation that the information Cerner disseminated was "private" (or is the sort of information that would give rise to harm recognized in common law) is insufficient on its own; these inquiries depend on the information that was disseminated. *Jones* held that a plaintiff claiming the defendant recorded her mouse movements, clicks, and keystrokes on a retailer's website, without more, did not suffer a concrete injury. *Id.* At the same time, the court in *Jones* pointed out the plaintiff had not alleged that "personal information like her social security number, medical history, bank account figures, or credit card information" was recorded. *Id.* With respect to the case at bar, the unauthorized disclosure of some types of information (such as information about a person's diseases or medical condition) has been held sufficient to support standing. *See*, *e.g.*, *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 423 (4th Cir. 2025); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024).[10]

[9] The Courts of Appeal frequently rely on the Restatement (Second) when evaluating whether a plaintiff alleging an invasion of privacy has standing to assert the claim. *E.g.*, *Ojogwu v. Rodenburg Law Firm*, 265 F.4th 457, 463 n.4 (8th Cir. 2022) (citing § 652B); *Barclift v. Keystone Credit Servs., LLC*, 93 F4th 136, 145-46 (3d Cir. 2024) (citing § 652D).

[10] The Court does not agree with Cerner's argument that this injury theory requires that the information be misused. (*See* Doc. 21, pp. 19-20.) The cases it cites involves information that, on its own, does not implicate privacy

The difficulty here is that the Amended Complaint does not clearly describe the information that Cerner allegedly disseminated, or discuss whether the circumstances are sufficiently close to the harm recognized in common law.

The Amended Complaint contains 314 paragraphs, but there is not a discrete set of allegations that specifically describe the information Plaintiffs allege Cerner made available to Google, and the paragraphs the Court has identified as potentially describing the information are vague and contradictory. For instance:[11]

- In paragraph 1, Plaintiffs allege their suit is based on Cerner divulging their "Health Information," and a footnote explains that "'Health Information' has the same meaning as defined by the Federal Trade Commission and as protected under the Health Information Portability and Accountability Act ('HIPPA')." However, in the ensuing paragraphs, Plaintiffs do not consistently use this defined term. In some paragraphs they refer simply to "health information;" it is not clear if this is meant to be the defined term. In other paragraphs, Plaintiffs use different words and phrases entirely. (*E.g.*, Doc. 14, ¶¶ 46, 64, 66.)

- Plaintiffs do not set forth the HIPPA definition they are relying on or specify its source. They may be relying on 45 C.F.R. § 160.103, which states as follows:

> *Health information* means any information, including genetic information, whether oral or recorded in any form or medium, that:
>
> (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and

---

interests (such as credit card numbers), so the mere divulging of that information (as opposed to the divulging of truly personal information) is not alone harmful.

[11] The Court has reviewed the Amended Complaint in its entirety, but it does not intend to provide an exhaustive analysis; what it provides here are representative examples.

> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

But this description is very broad, and Plaintiffs do not specify the information that is at issue in *this* case and thus do not permit the Court to conduct a proper standing analysis. Relatedly, there is much information that might fall under this definition and yet not support Article III standing.

- To the extent that Plaintiffs rely on HIPPA regulations to define the information at issue, it appears that HIPPA treats some health information differently. For instance—and as potentially relevant here—it treats some information differently when it is anonymized. *E.g.*, 45 C.F.R. § 164.502(d). The Amended Complaint does not clearly allege whether the information at issue can be associated with a specific patient, which can be important in determining whether Plaintiffs have alleged that private information was communicated to Google.
- On those occasions when specific information is discussed, the information discussed does not always appear to justify Article III standing. (*E.g.*, Doc. 14, ¶¶ 36(a), 36(b), 49-50.)
- In other instances, it is not clear what information Plaintiffs allege was conveyed. For instance, ¶ 51 states that "when a patient clicks on a link to view a specific test result or make an appointment . . . Google receives the precise text of the patients' query." But clicking on a link does not create text, so Plaintiff's allegation does not clearly explain what information is allegedly conveyed to Google.
- Finally, Plaintiffs' response to the Motion to Dismiss does not clearly discuss any specific information they allege was divulged by Cerner. They refer to 44 paragraphs

> from the Amended Complaint that purportedly allege Cerner's systems "automatically disclos[ed] the content of patients' communications with their healthcare providers to Google," (Doc. 26, p. 11), but the only paragraphs that make this claim do so generally, (*e.g.*, Doc. 14, ¶¶ 4, 48, 53, 54, 57), and other paragraphs suggest the information conveyed does not consist of the content of patient or doctor communications. (*E.g.*, Doc. 14, ¶¶ 50, 66, 68.)

Thus, it is not clear from the Amended Complaint (or Plaintiffs' argument) exactly what kind of information they allege Cerner conveyed to Google. As just one example: there may be legally important differences between conveying (1) the fact that a patient accessed the patient portal, (2) the fact that a patient requested *a* test, (3) the fact that a patient requested *a particular* test, and (4) the results of a particular test. There also may be differences between associating any conveyed information (1) with a particular person and (2) with an IP address. Without clarification from Plaintiffs as to exactly what information they allege was divulged, the Court cannot analyze whether they have standing.

Plaintiffs are directed to file a Supplemental Brief that specifies the information they allege Cerner divulged to Google. They need to be as specific as possible, including by addressing the issues discussed above. They must also identify the Amended Complaint's paragraphs that allege these facts. Finally, they must explain why divulging the information they have specified constitutes a concrete injury; in so doing, they must explain why the harm they allege is sufficiently close to a harm protected in common law to permit the conclusion that their harm constitutes an Article III injury.

## III. CONCLUSION

The Motion to Dismiss, (Doc. 20), is **DENIED IN PART** and **DEFERRED IN PART**. It is denied to the extent Cerner seeks dismissal based on the first-filed rule. It is deferred to the extent it contends that Plaintiffs lack standing or have failed to state a claim for which relief can be granted. Plaintiffs shall file a Supplemental Brief, as outlined above, on or before January 29, 2026. Cerner shall have twenty-one days thereafter to respond to the Plaintiffs' Supplemental Brief. The parties' submissions should not exceed eight (8) pages in length.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

Date: January 8, 2026